```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION


BRINDER L. TIMMONS,            :

     Plaintiff,                :

vs.                            :
                                    CIVIL ACTION 07-0569-KD-M
MICHAEL J. ASTRUE,             :
Acting Commissioner of
Social Security,               :

     Defendant.                :
```

## REPORT AND RECOMMENDATION

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*).  The action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Oral argument was waived in this action (Doc. 18).  Upon consideration of the administrative record and the memoranda of the parties, it is recommended that the decision of the Commissioner be affirmed, that this action be dismissed, and that judgment be entered in favor of Defendant Michael J. Astrue and against Plaintiff Brinder L. Timmons.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evi-

dence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-six years old, had completed an eighth-grade special education curriculum (Tr. 349), and had previous work experience as a janitor (Tr. 347).  In claiming benefits, Plaintiff alleges disability due to hypertension and broad-based disc protrusion at the L3-4 level of the spine (Doc. 13).

The Plaintiff filed a protective application for SSI on October 12, 2004 (Tr. 86-88).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Timmons was capable of performing her past relevant work as a janitor (Tr. 36-43).  Plaintiff requested review of the hearing decision (Tr. 44) by the Appeals Council, but it was denied (Tr. 5-7).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Timmons alleges that the ALJ committed reversible error by concluding that her pain allegations and related symptomatology in her back and feet were not severe impairments (Doc. 13).  Defendant has responded to—and denies—this claim (Doc. 14).  The law regarding this claim

is as follows.

In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf*. 20 C.F.R. § 404.1521(a) (2007).[1]  The eleventh circuit has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  Under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms

---

[1] "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."  *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).  Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R.. 404.1529(a) (2007).  The evidence of record follows.

On September 30, 2003,[2] Plaintiff had a CT of her abdomen, with contrast, performed at the Mobile Infirmary Medical Center which revealed renal calcifications (Tr. 179).  A cystoscopy, performed on October 28, 2003 at the Springhill Memorial Hospital, confirmed calcifications in both kidneys (Tr. 181-83). An x-ray a week later, also at Springhill Memorial, confirmed the same (Tr. 184-85).  On April 30, 2004, Timmons went to Mobile Infirmary and had extracorporeal shock wave lithotripsy performed on the right kidney which caused "excellent fragmentation and dusting" of one of the stones (Tr. 189; *see generally* Tr. 186-91).

Plaintiff was seen at the Franklin Primary Health Center on June 23, 2004 for complaints of back pain which she stated was five on a ten-point scale; it was noted that her spine was straight; her gait was normal and that she looked capable of exercise; and that she had a full range of motion in her spine and extremities without pain or crepitation (Tr. 208-14). Nevertheless, a prescription was written for Darvocet[3] (Tr. 209). Four weeks later, Timmons appeared again at Franklin, claiming

---

[2]The Court is only going to reference and summarize the medical evidence which relates to her specific claim of pain allegations and related symptomatology in her back and feet.

[3]Propoxyphene napsylate, more commonly known as Darvocet, is a class four narcotic used "for the relief of mild to moderate pain" and commonly causes dizziness and sedation.  *Physician's Desk Reference* 1443-44 (52nd ed. 1998).

5

that the medication was not working; a prescription for Ultracet[4] was written (Tr. 206-07).  On August 5, Plaintiff returned to Franklin, complaining of back pain; the doctor noted paraspinal muscle spasm and tenderness and prescribed Flexaril[5] and Motrin (Tr. 204-05).

Timmons went to the ER at Mobile Infirmary on September 20, 2004, for chronic back pain (Tr. 222-24).  The nurse's note indicates that she needed to be referred by her doctor, but that her pain was minimal.

Plaintiff was seen at the Stanton Road Clinic on September 3, 2004 with complaints of lower lumbar pain with numbness and tingling in the right leg; she was referred to another doctor for a radiculopathy evaluation (Tr. 244-45).[6]  Timmons presented again on October 27 with the same complaints; it was noted that she could bend over and touch her toes with lumbar back pain that radiated and that her neurological exam was within normal limits (Tr. 243).  Plaintiff was seen again on January 12 and February 9, 2005 for lower back pain complaints (Tr. 241-42).

On February 28, 2005, Timmons went to Mobile Infirmary with

---

[4]*Ultracet* is made up of acetaminophen and tramadol and is used for the short-term (5 days or less) management of pain.  *See* http://health.yahoo.com/drug/d04766A1#d04766a1-whatis

[5]Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

[6]A note from October 27 stated that the evaluation was not completed because Medicaid would not pay for it (Tr. 243).

complaints of back pain (Tr. 247-50). Tenderness was noted at the Lumbar 4-5; sensation was reasonable around her ankles and feet. The doctor noted that "[a]t 44 years of age you might expect some degenerative change" (Tr. 248). The doctor's diagnosis was low back pain, degenerative disc disease of the lumbar, lumbar facet joint syndrome, and exogenous obesity. An epidural was performed at the L4-5.

Plaintiff was seen on July 19, 2005 by Dr. Andin C. McLeod for complaints of low back pain (Tr. 289-91). He noted that she was non-tender to palpation over the back, was able to touch her toes, and could walk on her toes and heels without difficulty. "Her bilateral lower extremities [were] intact 5/5 strength in plantar and dorsiflexors, knee flexion and extension and hip flexion and extension" (Tr. 289). She had a normal lumbar spine x-ray though she did have "facet joint hypertrophy of the lower spine and also anterior pain of L3" (*id.*). She was encouraged to use NSAID for pain as needed.

It was noted on September 2, 2005, by the Mobile County Health Department, that Timmons complained of foot and leg pain for which she was prescribed Voltaren[7] (Tr. 292-92A).

On October 13, 2005, a Physical Capacities Evaluation form was completed by Dr. Kamran Afzal, with the Mobile County Health

---

[7]*Voltaren* is a nonsteroidal, anti-inflammatory drug used for the treatment of acute and chronic treatment of ankylosing spondylitis. *Physician's Desk Reference* 996-997 (48th ed. 1994).

Department, who rendered the opinion that Plaintiff was capable of sitting for four hours and standing/walking for three hours at a time while able to sit and stand/walk for six hours during an eight-hour day (Tr. 319, 342).  The doctor indicated that Timmons could lift up to ten pounds for three hours and up to twenty pounds for one hour during an eight-hour day; he further indicated that Plaintiff could carry up to ten pounds for four hours, up to twenty pounds for three hours, and up to twenty-five pounds for one hour during an eight-hour day.  Timmons would have no problems with simple grasping, pushing and pulling of arm or leg controls, and fine manipulation.  During an eight-hour day, Plaintiff was capable of bending for one hour, squatting for two hours, crawling and climbing for three hours, and reaching for seven hours.  Afzal indicated that Plaintiff was moderately restricted in being involved in activities at unprotected heights, being around moving machinery, being exposed to marked changes in temperature and humidity, as well as being exposed to dust, fumes, and gases.  The doctor indicated that Plaintiff has had these abilities for greater than five months and that she would probably miss more than two days of work per month.  Dr. Afzal also completed a pain form in which he indicated that Timmons's back pain would distract her from adequately performing daily activities, that physical activity would increase her pain, and that necessary drugs to counteract her pain would cause

drowsiness (Tr. 320-20A).  The doctor noted that her pain would limit her from heavy lifting and that she had suffered with the pain for greater than a year.

On September 22, 2005, Plaintiff complained of pain in her lower left side for which the Mobile County Health Department prescribed Lortab[8] (Tr. 332).  On March 9, 2006, the Lortab prescription was refilled for back pain (Tr. 325-25A).

At the evidentiary hearing, Plaintiff testified that she took pain medication for her back and leg pain which bothers her constantly; the medicines help sometimes, but not always, and they make her drowsy (Tr. 339-56).  She said that she is able to sweep and mop a little, but that three or four days a week she is unable to do anything and has to lie down.

The ALJ found that there was no evidence that Plaintiff's back and leg problems were severe impairments (Tr. 40).  He specifically stated that "treatment records do not reflect frequency of complaints, pain level indications, or typical pain management referrals and treatment usually associated with the level of pain testified to by the claimant.  Additionally, the only objective test referred to in the record is a normal lumbar spine x-ray dated July 19, 2005" (Tr. 40).  The ALJ found that Plaintiff was not a credible witness (Tr. 41), a finding which

---

[8] *Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain."  *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

Plaintiff has not challenged in this action.  The ALJ also discounted Dr. Afzal's opinions regarding Plaintiff's limitations and pain as being without substantial support from the other evidence of record (Tr. 42); Timmons has not challenged this finding either.

The Court finds substantial support for the ALJ's finding.  The evidence simply does not support her argument that her back and feet pain were sufficient to rise to the level of severe impairments as she has failed to show that they would limit her ability to work.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is recommended that the Secretary's decision be affirmed, see *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be dismissed, and that judgment be entered in favor of Defendant Michael J. Astrue and against Plaintiff Brinder L. Timmons.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  **<u>Objection</u>**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d

736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 20th day of March, 2008.

                                                 s/BERT W. MILLING, JR.
                                                 UNITED STATES MAGISTRATE JUDGE